UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

SHAWN RYAN KOCH,                )
                                )
        Petitioner,              )
                                )
    v.                           )      Case No. 05-4003
                                )
ALAN UCHTMAN, WARDEN,            )
                                )
        Respondent.              )

**O R D E R**

Before the Court is Shawn Ryan Koch's ("Koch's") Petition for Writ of Habeas Corpus By A Person in State Custody [Doc. # 7]. For the reasons that follow the Petition will be DENIED.

**Background**

Koch lived in Moline, Illinois, with Jeri Cook and her 22-month old son until January 22, 1993. On that date, Koch beat up Cook and moved in with his mother. Cook obtained an order of protection against Koch, changed the locks to her apartment, and removed Koch's name from the lease on the apartment. On February 10, 1993, Koch broke the door down to Cook's apartment and stabbed Cook 15 times and her son 8 times. After a bench trial at which the predominant issue was Koch's sanity at the time of the offense, the trial court found Koch guilty of two counts of attempted first degree murder and one count of home invasion. The court sentenced him to an aggregate term of 70 years imprisonment.

Koch appealed his conviction and sentence, arguing that he proved his insanity defense by a preponderance of the evidence, and that the trial court abused its discretion in sentencing him because it failed to consider mitigating factors. The appellate

court affirmed Koch's conviction and sentence, and the Illinois Supreme Court denied his petition for leave to appeal. See People v. Koch, No. 3-94-0428 (Ill. App. 3rd Dist. May, 15, 1996), petition for leave to appeal denied, No. 81302 (Ill. Oct. 2, 1996). On January 9, 1997, Koch filed a pro se postconviction petition, arguing (1) his trial counsel was ineffective, (2) his home invasion conviction was obtained using an invalid order of protection, and (3) the prosecutor introduced perjured testimony. Appointed counsel twice amended Koch's petition, arguing (1) Koch's home invasion conviction was invalid, and (2) Koch's sentence violated Apprendi v. New Jersey, 560 U.S. 466 (2000). The trial court denied the postconviction petition. Koch appealed that decision raising only the Apprendi arguments. The appellate court affirmed. Koch filed a petition for leave to appeal with the Illinois Supreme Court, again raising the Apprendi arguments as well as arguing that the trial court abused its discretion in convicting him of home invasion. The Illinois Supreme Court denied leave to appeal, and the United States Supreme Court denied Koch's petition for writ of certiorari. See People v. Koch, No. 3-94-0428 (Ill. App. 3rd Dist. Mar. 28, 2003), petition for leave to appeal denied, No. 81302 (Ill. Oct. 7, 2003), cert. denied, 541 U.S. 993 (2004).

In his current Petition, Koch argues that (1) the trial court abused its discretion in sentencing him to 70 years imprisonment given his background of child abuse, his youth, and his potential for rehabilitation; (2) he sustained his burden of proving his insanity at the time of the offense; (3) the trial court abused its

discretion in convicting him of home invasion; and (4) his sentence was improperly based on a factor which was neither pled nor proven beyond a reasonable doubt.  The State has responded, and this Order follows.

## Legal Standard

Before reaching the merits of a petition for writ of habeas corpus brought pursuant to section 2254, a district court must consider "whether the petitioner exhausted all available state remedies and whether the petitioner raised all his federal claims during the course of the state proceedings." Farrell v. Lane, 939 F.2d 409, 410 (7th Cir. 1991), quoting Henderson v. Thieret, 859 F.2d 492, 496 (7th Cir. 1988).  If the answer to either of these questions is "no," then the failure to exhaust state remedies or procedural default bars the petition. See id.  In other words, if a petitioner fails to give the state courts a full and fair opportunity to review his claims, then his petition must fail. See Bocian v. Godinez, 101 F.3d 465, 468-69 (7th Cir. 1996).

Exhaustion of a federal claim occurs when it has been presented to the highest state court for a ruling on the merits or when it could not be brought in state court because a remedy no longer exists when the federal petition is filed.  Id.  In the present case the State concedes that Koch has exhausted his state remedies.

Procedural default occurs when a claim could have been but was not presented to the state court and cannot, at the time the federal petition is filed, be presented to the state court.  See Resnover v. Pearson, 965 F.2d 1453, 1458 (7th Cir. 1992).  This

3

occurs in one of two ways.  First, a procedural default may occur when a petitioner fails to pursue each appeal required by state law, see Jenkins v. Gramley, 8 F.3d 505, 507-08 (7th Cir. 1993); or when he did not assert the claim raised in the federal habeas petition in the state court system.  See Resnover, 965 F.2d at 1458-59.  The second way in which a petitioner may procedurally default a claim is when a state court disposes of the case on an independent and adequate state law ground, regardless of whether that ground is substantive or procedural.  See Coleman v. Thompson, 501 U.S. 722, 729 (1991).

Federal review is barred for claims that are procedurally defaulted unless the petitioner can demonstrate cause and prejudice.  See Engle v. Isaac, 456 U.S. 107, 129 (1982); Farrell, 939 F.2d at 411.  Review in federal court is also possible if otherwise a fundamental miscarriage of justice would occur in that a constitutional error probably resulted in the conviction of someone who is actually innocent.  See Schlup v. Delo, 513 U.S. 298, 320-26 (1995).

## Analysis

**Koch's claim that the trial court abused its discretion in sentencing him to 70 years imprisonment is unreviewable because it is grounded solely in state law.**

A federal court will not normally review a state sentencing determination which falls within the statutory limit.  See Gleason v. Welborn, 42 F.3d 1107, 1112 (7th Cir. 1994).  Koch does not argue that he was sentence outside of the statutory limits, and it does not appear that he was.  Instead, he asserts the trial court should have considered mitigating factors and sentenced him to a

lesser sentence. However, the trial court's discretionary decision to sentence Koch within the statutorily prescribed range is not reviewable here. See id.

**Koch did not sustained his burden of proving his insanity at the time of the offense.**

Koch argues he submitted sufficient evidence to establish his insanity at the time of the offense. Under Jackson v. Virginia, 443 U.S. 307 (1979), a federal court is empowered to grant habeas relief only "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Id. at 319. Congress expressly amended section 2254 to require only a deferential review for reasonableness with respect to mixed questions of law and fact, such as Jackson claims. Thompson v. Keohane, 516 U.S. 99,107-109 (1995).

The Illinois Appellate Court summarized the following facts from the trial court record which are relevant to Koch's current claim:

> On the morning of February 10, 1993, defendant drove to the vicinity of Jeri's apartment, parked some distance away and walked back to the building. He used his own key to enter the common vestibule after Jeri told him to leave. When she heard defendant at her door, Jeri called the police and ran into Drew's bedroom. Defendant broke the door and entered the apartment. He displayed a knife and duct tape and threatened to kill Drew if Jeri did not stop screaming. She attempted to escape with Drew, but defendant pulled her back into the apartment and into her bedroom. There, he stabbed Drew 8 times. He told Jeri that Drew was dead and then stabbed Jeri 15 times as she pleaded for her life and attempted to cover the child with her hands. Defendant then left the apartment. The police and an ambulance arrived a short time later. As a result of the stabbing, Drew suffered a lacerated bowel, a collapsed lung and the loss of a kidney. Jeri's

wounds required stitches but were not life-threatening.

On February 11, defendant telephoned his mother from Aurora, Nebraska. She urged him to come back and surrender. Defendant called the Moline police, who told him that both Jeri and Drew were alive. Defendant responded, "Yes, but I tried to kill them." Later that evening, defendant surrendered. A search of his vehicle yielded, inter alia: maps of Iowa and Nebraska; a bloody buck knife; duct tape; a radio scanner and a blood-smeared scanner guidebook; receipts for a scanner and guidebook purchased from Radio Shack stores in the Moline area on February 9, 1993; and a bag and receipt for purchases of clothing and toiletries at a Wal-Mart store in Fremont, Nebraska, on February 10, 1993. Expert forensics testimony established that blood on the knife and on the sweatshirt defendant was wearing when he surrendered to the police matched Jeri Cook's.

Defendant's cousin, John Kellerman, testified that a few days before the stabbing, defendant showed him a knife and duct tape and talked about stabbing Jeri.  On February 9, defendant withdrew $3,000 from a bank account held by his sister, Kristy Koch, in Elgin.  Later, defendant met Kellerman in a park in Moline and told him that he was hiding from the police to avoid service of Jeri's order of protection.  He counted out $1,000 and told Kellerman to hold it in case defendant needed money for bail. Next, defendant and Kellerman drove to Jeri's apartment, parked a few blocks away, walked back down an alley and entered the apartment through a rear door. Defendant said he wanted to see whether Jeri had a "restraining order" against him. Later, the two men went to a Radio Shack store where defendant purchased a scanner, explaining that he wanted to monitor police activity and avoid capture.  Defendant purchased a guide for the scanner at another Radio Shack store. Then, they returned to Kellerman's apartment and programmed the scanner to receive local police radio bands. Kellerman next saw defendant when he came back on February 11 and requested his money.

Defendant's mother and sisters testified that defendant had been abused by his father, a stepmother and a stepfather, following his parents' divorce when defendant was eight years old. They testified that his first long-term relationship was with Jeri, and he was noticeably distraught by their break-up in January. After returning to his mother's home, defendant did not eat or sleep

6

>   well. He cried, ran up telephone bills calling Jeri and seemed obsessed with her.
>
>   Defendant presented expert psychological testimony in support of his insanity defense.  Following a seven-hour interview and testing, Dr. Wayne Michael Sliwa, a clinical psychologist, diagnosed defendant's condition as dissociative amnesia, depersonalization and dissociative disorder not otherwise specified.  Sliwa explained that on February 10, defendant saw his hands committing acts, he heard voices inside his head, and he took flight, all without the integration of mental faculties. Sliwa opined that the condition was rooted in defendant's history of child abuse and that defendant was legally insane from the time he entered Jeri's apartment until some time after he entered Nebraska.
>
>   In rebuttal, the State presented the testimony of Dr. Kirk Witherspoon, a clinical psychologist, who interviewed defendant to determine his fitness to stand trial.  Witherspoon's diagnosis was malingering and adjustment disorder with depression by history. Witherspoon testified that he did not detect any serious mental illness in defendant. He also stated that dissociative disorder is a neurotic condition, not a psychosis.
>
>   The State also presented Dr. Eric Ritterhoff, a psychiatrist, who evaluated defendant for sanity and suicidal tendencies. Dr. Ritterhoff did not believe that defendant had a dissociative reaction or amnesia on February 10.  He said defendant suffered from adjustment disorder, he was "very upset," and he felt suicidal. However, Ritterhoff found nothing to substantiate a conclusion that defendant was legally insane at the time of the offense.

See People v. Koch, No. 3-94-0428 (Ill. App. 3rd Dist. May, 15, 1996), petition for leave to appeal denied, No. 81302 (Ill. Oct. 2, 1996).

The Illinois Appellate Court accurately summarized the relevant law regarding the insanity defense as follows:

>   The law presumes all persons to be sane. People v. Eckhardt, 156 Ill.App.3d 1077, 509 N.E.2d 1361 (1987).

7

>However, by statute, a person is not criminally responsible if at the time of an offense he suffers from a mental disease or defect such that he lacks substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. 720 ILCS 5/6-2(a) (West 1992). When a defendant raises the affirmative defense of insanity, he has the burden of proving by a preponderance of the evidence that he was insane when he committed the offense. 720 ILCS 5/6-2(e) (West 1992); People v. Janecek, 185 Ill.App.3d 89, 540 N.E.2d 1139 (1989). The trier of fact may accept the opinion of one expert over that of another. People v. Sojak, 273 Ill.App.3d 579, 652 N.E.2d 1061 (1995). Also relevant to the question of sanity is evidence that the defendant spent time thinking about or planning the crime. Eckhardt, 156 Ill.App.3d 1077, 509 N.E.2d 1361. The determination of a defendant's sanity at the time of the offense must be based on the totality of the evidence (Echkardt, 156 Ill.App.3d 1077, 509 N.E.2d 1361), and will not be disturbed on appeal unless the determination is contrary to the manifest weight of the evidence. People v. Johnson, 146 Ill.2d 109, 585 N.E.2d 78 (1991).

In this case, Koch presented expert testimony at trial concluding that he was insane when he committed the crimes at issue. The State countered this evidence with their own expert testimony. Additional evidence presented by the State suggested Koch was not insane at the time of the crimes including evidence that showed Koch planned the crimes by talking to his cousin days earlier about stabbing Cook, by withdrawing money from the bank, and by purchasing a police scanner; and evidence that he was avoiding capture when he retrieved $1,000 from his cousin's house, bought Iowa and Nebraska maps, and fled to Nebraska.

On this record, the accuracy of which Koch does not dispute, the Court cannot say that no rational trier of fact could have found Koch sane at the time of the offense. Moreover, the Court cannot say that no rational trier of fact could have found the State's evidence was sufficient to establish guilty beyond a

reasonable doubt.  Accordingly, the Court will deny Koch relief on this claim.

**Koch's claim that the trial court abused its discretion in convicting him of home invasion is procedurally defaulted.**

Koch raised this claim in his postconviction petition at the trial court level and in his petition for leave to appeal to the Illinois Supreme Court, however, he failed to raise it in the Appellate Court of Illinois.[1]  This failure constitutes a procedural default of the claim.  See Jenkins v. Gramley, 8 F.3d 505, 508 (7th Cir. 1993) (under Illinois law, habeas petitioner procedurally defaulted his claim by failing to appeal from state court's denial of his petition for postconviction relief).  Koch has not alleged any cause for defaulting this claim.  Therefore, the only way he can proceed is to show a constitutional error probably resulted in the conviction of someone who is actually innocent.  Koch has presented no evidence to suggest he is actually innocent.  Cf.  Crist v. Dolan, No. 97-4116, 1998 WL 516760 at **2 (7th Cir. 1998) (actual innocence standard not satisfied where petitioner offered no "'new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial,'" citing Schlup, 513 U.S. at 327) (unpublished disposition).  Accordingly, the Court finds federal review of this claim is not available.

---

[1]This claim was not raised in his direct appeal.

**Koch is not entitled to relief under <u>Apprendi v. New Jersey</u>, 560 U.S. 466 (2000).**

Koch argues his sentence was improperly based on a factor which was neither pled nor proven beyond a reasonable doubt. This argument is derived from the United States Supreme Court's opinion in <u>Apprendi</u>. However, the Seventh Circuit Court of Appeals has held that <u>Apprendi</u> "does not disturb sentences that became final before June 26, 2000, the day of its release." <u>Curtis v. United States</u>, 294 F.3d 841, 844 (7th Cir. 2002). Koch's sentence became final in 1996, prior to the effective date of <u>Apprendi</u>. Consequently, there is no basis for granting relief on this claim.

## Conclusion

IT IS THEREFORE ORDERED that Shawn Ryan Koch's Petition for Writ of Habeas Corpus By A Person in State Custody [Doc. # 7] is DENIED.

CASE TERMINATED.

Entered this   12th   day of January, 2006.

                                                s/ Joe B. McDade
                                                JOE BILLY McDADE
                                      United States District Judge